IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **LEE HOLDEN PARKER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. **05-143-WDS** |
| | ) | |
| **JOHN EVANS, COLLEEN RENNISON,** | ) | |
| **and RONALD WILLIAMS,** | ) | |
| | ) | |
| Defendants. | ) | |

### REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to United States District Judge William D. Stiehl pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

Before the court is defendants' Motion for Summary Judgment and Supporting Brief. **(Doc. 67)**. The motion is filed by defendants Evans and Williams, and is supported by exhibits, including the affidavits of defendants.

The notice required by *Lewis v. Faulkner*, **689 F.2d 100, 102 (7th Cir. 1982)** was served on plaintiff. **See, Doc. 68.** Plaintiff filed responses at **Docs. 69 & 70**.

### Nature of Plaintiff's Claim

Lee Holden Parker is an inmate in the custody of the Illinois Department of Corrections who brings this suit under **42 U.S.C. §1983**. He alleges that defendants have interfered with his right to access the courts. He claims that, in 2004, he prepared a lawsuit to be filed against 46 defendants, alleging "a vast conspiracy of financial corruption, inmate abuse, and violation of inmates' constitutional rights." **See, Doc. 15, p. 2**. The lawsuit was more than 15 pages long,

1

and was supported by 334 pages of exhibits. Parker claims that defendant Rennison, who worked in the library at Pinckneyville Correctional Center, refused to make the copies that he requested, and that Evans sanctioned her refusal by failing to respond to plaintiff's grievances and complaints. He also claims that Williams confiscated the master copy of the complaint and exhibits in a shake-down of his cell, and that those original documents have never been recovered.

Strangely enough, as was noted in the court's order on preliminary review, Parker did apparently send the lawsuit in question, or at least a part of it, to this court in January, 2005. A case was opened under case number 05-044-JPG. Parker then notified the court that he did not want to actually file the lawsuit, but he merely wanted advice and verification of court policy about copies and exhibits. **See, 05-044-JPG, Doc. 6**. He moved to voluntarily dismiss the case, which was granted. He also requested return of his original documents. That request was denied, but copies of the documents were furnished to him. **05-044-JPG, Docs. 8-13.**

## Standard for Summary Judgment

Summary judgment is appropriate under **Fed.R.Civ.P. 56** where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).** The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party. **See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986).** Once the moving party has produced evidence to show that he or she is entitled to summary

judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial. ***Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).** In responding to a summary judgment motion, the non-moving party may not simply reiterate the allegations contained in the pleadings; more substantial evidence must be presented at this stage. Moreover, a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," ***Anderson*, 477 U.S. at 247**, or by "some metaphysical doubt as to the material facts," ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).** Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." ***Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.**

Summary judgment is not barred by the mere existence of some factual dispute. ***Anderson*, 477 U.S. at 248; see also, *JPM Inc. v. John Deere Industrial Equipment Company*, 94 F.3d 270, 273 (7th Cir. 1996).** Only disputes as to facts that might affect the outcome of the suit in light of the substantive law are sufficient to defeat summary judgment. Disputes as to irrelevant or unnecessary facts do not preclude summary judgment. ***Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).**

Plaintiff is a *pro se* inmate, and his pleadings must be liberally construed. ***Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir.1981).**

## Analysis

**1.** **Warden Evans**

Defendant Evans argues that he is entitled to summary judgment because the undisputed facts show that he did not violate plaintiff's constitutional rights. He is correct.

3

Evans was the warden at Pinckneyville Correctional Center in 2005. Parker claims that he submitted numerous complaints and grievances to Evans about his dissatisfaction with the services of the law library at Pinckneyville.

Evans has filed an affidavit in which he states that, each time he received a complaint from plaintiff, he either forwarded it to the library staff to deal with, or he contacted the law library staff to see that Parker's issues were dealt with. He states that he relied on his subordinates in the library to deal with Parker's issues. He further states that there were nearly 2000 inmates housed at Pinckeyville, and the warden could not personally handle every issue brought to his attention by every one of those inmates. **Doc. 67, Ex. C, ¶5-7.** In addition, Evans specifically denies that he knew of or participated in any conspiracy to prevent Parker from filing his lawsuit **Ex. C, ¶8.**

A prison inmate has no constitutional right to have his grievance addressed. **See,** ***Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001);** ***Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).** To the extent that Parker is complaining that Evans ignored or failed to act on his complaints, Evans is entitled to judgment. "Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation." ***George v. Smith*, 507 F.3d 605, 609-610 (7th Cir. 2007).**

In response, Parker says that the statements in Evans' affidavit are lies. **See, Doc. 69.** This is insufficient to rebut the factual assertions in the affidavit. **Rule 56(e)**. At this stage, plaintiff may not simply deny defendant's factual assertions or rely on the allegations of his complaint. Rather, he has to come forward with evidence that shows that there is a genuine dispute as to the material facts. ***Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir.**

4

**1996).**

Parker has not pointed to any evidence to suggest that Evans participated in a conspiracy to keep him from filing his lawsuit. He points only to the correspondence which he sent to Evans complaining about Rennison not making his copies. **See, Doc. 69, ¶4**. Parker's correspondence to Evans obviously does not constitute evidence that Evans conspired with Rennison.

In addition, Parker's own evidence affirmatively demonstrates that his constitutional rights were not violated by either Rennison or Evans. To begin with, there is no constitutional "right to xerox." ***Jones v. Franzen*, 697 F.2d 801, 803 (7th Cir. 1983)**. Rather, plaintiff must show that the denial of copying services prevented him from exercising his right to access the court. However, plaintiff's evidence affirmatively demonstrates that neither Evans nor Rennison prevented him from filing his lawsuit.

In his deposition, plaintiff testified that the complaint was 173 pages long, and there were 334 pages of exhibits. There were 46 defendants. **Doc. 67, Ex. A, p. 17**.

A review of Parker's exhibits reveals that it was his own actions, and not the actions of the library staff, that resulted in his lawsuit not being filed. Group Exhibit L, attached to the amended complaint **(Doc. 14)**, consists of memos and letters between Parker and Rennison. In September of 2004, Parker wrote to Rennison proposing that he submit one-half of the complaint at a time for copying. He proposed that, after the entire complaint had been copied, he would then send her the "master copy, from which each extra copy may be made, stapled, and enveloped for delivery to the Court with the USM 285s." **Ex. L, p. 24.** He also instructed her to reduce 84 pages of material that was on 8 ½ by 14" paper to 8 ½ by 11" size, based on his

reading of the rules for filing briefs in the Seventh Circuit Court of Appeals. **Ex. L, p. 22.** In fact, the rules to which Parker was referring do not apply to filing a new lawsuit in the district court. Rennison informed him repeatedly that his exhibits did not need to be reduced, and, indeed, did not even need to be filed with his complaint. **Ex. L, pp. 8, 9.** Parker also demanded that Rennison supply him with USM-285 forms; Rennison informed him repeatedly that such forms must be obtained from the court. **Ex. L, pp. 9, 10, 11**.

Parker refused to accept her advice. He persisted in demanding that the library make 46 copies of his lengthy lawsuit (one for each of the 46 defendants), and that the copies be bound on the left margin side (per Seventh Circuit rules, not applicable in the district court), and that USM-285 forms be attached to the defendants' copies. **Ex. L, p. 7**. This was wrong. In fact, as Rennison correctly advised plaintiff on January 8, 2005, all he needed was an original and one copy of his complaint in order to file his lawsuit. **Ex. L, p. 1**.

In short, it was Parker's own misunderstanding of the rules, coupled with his refusal to accept Rennison's advice, which prevented him from filing his lawsuit.

Lastly, Parker testified in his deposition that, at the time he filed the instant lawsuit, he still had a copy of his 173 page complaint. **Doc. 67, Ex. A, p. 30.** Instead of suing Rennison and Evans for denying him access to the court, he could simply have filed the underlying lawsuit. It was plaintiff's own erroneous beliefs about the court's filing requirements which prevented him from filing his lawsuit, and not the actions of defendants.

**2.      Lieutenant Williams**

Plaintiff alleges that defendant Williams shook his cell down and confiscated his "master copy" of the lawsuit on March 14, 2005. The master copy was never recovered, and the

"monumental task of duplicating it is presently beyond Parker's physical capability and material access." **Doc. 14, p. 4.**

Williams filed an affidavit in which he states that he was not involved in a shakedown of plaintiff's property on March 14, 2005, and that he did not confiscate any of plaintiff's property or legal work on that date. **Doc. 67, Ex. B**.

In response, plaintiff refers to Exhibit O to his amended complaint. He says that "three staff witnesses were present when it was confiscated or heard him say he was going to shakedown the property." **Ex. 69, ¶5.**

The court has painstakingly reviewed Exhibit O, which consists of materials related to a grievance field by plaintiff. Plaintiff does assert in his grievance that Williams shook down his property. That grievance would not be admissible to prove that Williams did, in fact, confiscate the papers, especially in view of Parker's admission in his deposition that he was not present during the shake-down on March 14, 2005.

Plaintiff testified that, on March 14, 2005, he was scheduled to be released from segregation. He was informed that he was going to be put in a smoking cell, which he refused. As a result of his refusal of housing, he was moved to segregation in another building. Williams moved him. Parker testified that he was not present when his property was shaken down, but Williams said that he was going to shake it down himself. **Doc. 67, Ex. B, pp. 12-16**. When his property box was brought segregation later that day or the next, several items, including the lawsuit, were gone. **Ex. B, pp. 17-18.**

By his own admission, plaintiff did not witness the shake-down. He relies on his claim that Williams stated that he was going to shake down plaintiff's cell himself. However, that

7

evidence is insufficient to controvert the factual assertions in Williams' affidavit that he did not shake down the cell and that he did not confiscate any of plaintiff's property.

### 3. Defendant Rennison

Defendant Colleen Rennison is in default. **See, Doc. 71.** Plaintiff has filed an Ex Parte Rule 55 Motion for Jury Trial Default Damages **(Doc. 73)**. This court recommends that the motion be granted and that trial be scheduled forthwith.

### Recommendation

This court recommends that defendants' Motion for Summary Judgment **(Doc. 67)** be **GRANTED**. Judgment should be entered in favor of defendants John Evans and Ronald Williams. This court also recommends that plaintiff's Ex Parte Rule 55 Motion for Jury Trial Default Damages **(Doc. 73)** be **GRANTED** and the case be set for trial.

If this recommendation is adopted, the only issue remaining to be determined will be plaintiff's motion for default judgment as to defendant Rennison.

Objections to this Report and Recommendation must be filed on or before **February 14, 2008.**

**Submitted: January 28, 2008.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**U. S. MAGISTRATE JUDGE**